IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00351-RBJ

MICHAEL MILLER and
DIANE MILLER,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin Corporation,

      Defendant.

---

ORDER

---

At the conclusion of plaintiffs' evidence in the still ongoing trial of this case the Court

granted in part the defendant's motion for judgment as a matter of law under Rule 50 of the

Federal Rules of Civil Procedure. Plaintiffs have, in substance, moved for reconsideration of

that order. The Court has considered the parties' arguments and briefs, including a supplemental

brief filed by the defendant yesterday (the jury was excused for the day); and the Court has

conducted additional research of its own. For the reasons set forth in this order, the Court now

vacates its Rule 50 order to the extent that the Court had held that the earth movement exclusion

in the plaintiffs' policy necessarily excluded damage to the foundation of the home. Rather, the

Court now finds that whether the exclusion applies depends on the facts of the case as found by

the jury. This order also supersedes the Court's previous comments from the bench concerning

the exclusion.

## I. Background

### A. The Present Dispute

The parties dispute whether and to what extent the so-called earth movement exclusion in the Millers' insurance policy is applicable to the present facts. For purposes of a motion for a directed verdict, the Court must construe all evidence in favor of the plaintiffs. Doing so here, the relevant facts are as follows.

The plaintiffs' home was damaged in the Waldo Canyon Fire in the summer of 2012. Soon after the plaintiffs became aware that the fire might reach their home, they began clearing the brush and removing trees around the house in an attempt to prevent it from catching fire. When the fire did reach their garage, firefighters who were deciding which homes in the area might be saved selected the Millers' home, at least in part because they knew that the Millers had undertaken extensive mitigation efforts. By doing so, the firefighters may have also prevented dozens of other nearby homes from catching fire. However, in the process of putting out the fire at the Millers' house, the firefighters used an estimated 10,000 to 20,000 gallons of water. Plaintiff's evidence is that some of this water entered the soil beneath the home, causing it to swell and ultimately damaging the foundation of the house.

The parties dispute whether American Family is obligated to pay for repairs to the foundation if the damage was caused in whole or in part by the water released during the fire-fighting effort. They appear to agree, and indeed it seems obvious to the Court, that if the earth movement was unrelated to the fire or fire-fighting efforts, then any resulting damage is not covered by the policy. The disputed question is whether damage resulting from earth movement is excluded even if it was caused, in whole or in part, by the fire-fighting efforts.

### B.  The Policy Language

The policy provides, in relevant part, as follows:

**EXCLUSIONS – SECTION 1**
**PART A**

The following exclusions apply to Coverage A – Dwelling and Dwelling
Extension, Coverage B – Personal Property, Coverage C – Loss of Use and the
supplementary Coverages – Section 1.  We do not insure for loss caused directly
or indirectly by any of the following. Such loss is excluded regardless of any
other cause or event contributing concurrently or in any sequence to the loss.

1. Earth Movement, meaning any loss caused by, resulting from, contributed to or
aggravated by earthquake; landslide; subsidence; sinkhole; erosion; mud flow;
earth sinking, rising, shifting, expanding or contracting; volcanic eruption,
meaning the eruption, explosion or effusion of a volcano.

This exclusion applies whether or not the earth movement is combined with water
or rain.

We do cover only direct resulting loss when caused by:
a. fire;
b. explosion other than the explosion of a volcano; or
c. if an insured peril, breakage of glass or safety glazing material which is a part
of a building.

Ex. 1, Exclusions section I, Part A (Bates 17).

### II.  Analysis

### A.  This Court's Role

As a federal court sitting in diversity jurisdiction, this Court looks to Colorado choice-of-

law principles to determine what substantive law to apply.  *Sellers v. Allstate Ins. Co.*, 82 F.3d

350, 352 (10th Cir. 1996).  In Colorado, insurance policies are generally interpreted under the

law of the state where the policy was issued—here, Colorado.  *Id.*  The Court's duty is thus "to

ascertain and apply the most recent statement of state law by the state's highest court.  Although

[the Court is] not required to follow the dictates of an intermediate state appellate court, [it] may

view such a decision as persuasive as to how the state supreme court might rule."  *Id.* (internal

citations and quotations omitted).  Because there do not appear to be any Colorado Supreme

Court cases directly addressing the issues presently before the Court (the *Kane* case discussed

*infra* being the closest I could find), the Court looks to Colorado Court of Appeals decisions and

opinions from other jurisdictions for guidance.

### B.  Interpretation of the Earth Movement Exclusion

Resolution of the issues raised by the parties turns on the interpretation of the relevant

provisions in the plaintiffs' insurance contract.  Under Colorado law, "[t]he interpretation of an

insurance policy is a matter of law" to be decided by the Court.  *Allstate Ins. Co. v. Huizar*, 52

P.3d 816, 819 (Colo. 2002).  The Colorado Supreme Court has made clear that courts "must

enforce an insurance policy as written unless the policy language contains an ambiguity.  An

insurance policy is ambiguous if it is susceptible on its face to more than one reasonable

interpretation.  Any ambiguity in an insurance policy is construed in favor of providing coverage

to the insured."  *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005) (internal

citations omitted).

Given the parties' dispute in the present case, the Court must first interpret the relevant

language in the earth movement exclusion.  Then, in light of that interpretation, it answers two

distinct questions:

> (1) If the earth movement that damaged the Millers' foundation was caused solely
> by the fire and associated fire-fighting efforts, is the damage covered by the
> policy?
>
> (2) If the earth movement was caused in part by natural causes and in part by the
> fire and associated fire-fighting efforts, is any portion of the damage covered by
> the policy?

As explained below, the Court interprets the earth movement exclusion to apply only to earth

movement resulting from natural causes.  The Court then then answers the first question in the

affirmative and the second in the negative.

### 1. Ambiguity in the Earth Movement Exclusion

Although the Court must enforce the plain language of the contract absent an ambiguity,

the Court finds that the earth movement exclusion at issue here contains a critical ambiguity.  "In

construing earth movement exclusions, courts frequently consider whether the exclusion applies

only to losses caused by 'natural' events, as opposed to those caused by 'manmade' events."

*Liberty Ins. Underwriters, Inc. v. Westport Ins. Corp.*, No. CIVA 04CV01856 WYDBN, 2006

WL 2130728, at *5 (D. Colo. July 28, 2006).[1]  In reading the plain language of the exclusion

quoted above, it is unclear whether the exclusion applies only to naturally-occurring earth

movement or also to earth movement caused by human activity.

However, all of the specific examples listed appear to be naturally occurring phenomena.

Indeed, in *Liberty Ins. Underwriters, Inc.*, another judge on this court examined an exclusion that

precluded coverage for "[a]ny earth movement (other than sink hole collapse), such as an

earthquake, landslide, mine subsidence or earth sinking, rising, or shifting" and found that the

clause was ambiguous as to whether damage caused by earth movement precipitated by man-

made events was excluded.  *Id.* at *4, *5 (examining coverage for loss caused by increased

moisture content under a building that was caused, at least in part, by human action).  Similarly

here, because the earth movement provision does not make clear that the exclusion applies

regardless of whether the cause of the earth movement is man-made, the Court concludes that it

is ambiguous.

In fact, "the overwhelming majority of courts interpreting earth movement exclusions

---

[1]  Natural causes could be earthquakes or landslides, as identified in the exclusion, but also any
subsidence or sinking, rising, shifting or expansion of the earth resulting from its natural condition.  This
could include, for example, rain water infiltration into the soil that causes the soil to expand.  I distinguish
natural causes from man-made causes such as water poured on a burning home that seeps into the ground
and causes earth movement.

that do not contain lead-in language precluding coverage for damage from earth movement

'regardless' of its cause have concluded that such exclusions apply only to earth movement that

arises from natural events." *Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1087 (Fla.

2005) (citing twelve cases from various jurisdictions).  The court in *Fayad* emphasized that

because the contract at issue in that case did not contain a lead-in clause excluding coverage for

damage resulting from earth movement regardless of the cause of the earth movement, "[the]

earth movement exclusion is limited to damage caused by natural phenomena." *Id.* at 1088

(contrasting provision at issue there with policies precluding coverage for earth movement

"regardless of the cause of the excluded event").

In light of these cases, the Court concludes that the Colorado Supreme Court would

probably find that the earth movement exclusion in the present case is ambiguous as to whether

loss resulting from earth movement caused by man-made events, like the fire-fighting that took

place at the Millers' home, is excluded from coverage.[2]  Because of this ambiguity, the Court

must construe the policy in favor of the plaintiffs. *Cary*, 108 P.3d at 290 ("Any ambiguity in an

insurance policy is construed in favor of providing coverage to the insured.").  Thus the Court

interprets the exclusion in the Millers' policy to apply only to naturally-occurring earth

movement. [3]

---

[2] American Family cites *Thompson v. State Farm Fire & Cas. Co.*, 165 P.3d 900 (Colo. App. 2007), for
the proposition that exclusions should be read to preclude coverage for damage resulting from the
excluded event regardless of the cause of the event.  However, the policy at issue in that case contained
language explicitly providing that "[w]e do not insure for such loss regardless of: (a) the cause of the
excluded event," *id.* at 902, and thus the Court does not find it persuasive here, where the policy contains
no such language.

[3] The Millers argue that there is a different ambiguity in the earth movement exclusion that renders the
whole exclusion unenforceable when it is construed in the insured's favor.  After describing what the
exclusion excludes, it goes on to state, "[w]e do cover only direct resulting loss when caused by [fire or
explosion]."  I am not convinced that that creates an ambiguity.  Rather, as American Family argues, a
more reasonable interpretation is that this language creates an exception to the exclusion such that if earth
movement caused a fire or explosion to occur, the damage from the fire or explosion would be covered.

### 2. **Damage Caused Solely by the Fire and Fire-fighting Efforts**

In light of this interpretation of the earth movement policy, the Court concludes that if the

damage to the Millers' home was caused solely by the fire and associated fire-fighting efforts,

the exclusion does not apply.  Because it is undisputed that the American Family policy in this

case covers loss caused by the fire, the damage to the foundation is then covered by the policy.

Indeed, as a matter of common sense, fire loss includes loss caused by reasonable fire-fighting

activities.  Both the insured and the insurer benefit from fire-fighting activities that mitigate fire

loss.  Moreover, the Millers' policy provides coverage for any charges billed by the fire

department for the response to save or protect covered property up to $500.  Ex. 1,

Supplementary Coverages section I, paragraph 5 (Bates 14).  In this case, American Family has

paid for damage attributed to fire-fighting activities, such as damage caused by breaking down

doors to gain access to the house or garage.  This must include damage caused by the water

poured on the garage or house by the fire department in the effort to contain and put out the fire,

unless that damage is expressly excluded.  Thus, if the jury finds that the earth movement

responsible for the damage was caused solely by the fire and associated fire-fighting efforts, it is

covered.

However, the Court also finds that the foundation damage is covered under this factual

scenario for a second, independent reason.  Under Colorado law, a contract provision is

unenforceable if it violates public policy.  *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d

487, 492 (Colo. 1998).  Indeed, courts must be particularly vigilant in scrutinizing insurance

contracts.  *Id.*  As the Colorado Supreme Court has put it,

> Parties may not privately contract to . . . contravene the public policy of this state.
> . . . As we have recently noted, courts have assumed a heightened responsibility to
> scrutinize insurance policies for provisions that unduly compromise the insured's
> interests and have concluded that any provision of an insurance policy which

> violates public policy and principles of fairness is unenforceable. . . . We are not
> limited in our examination to the face of the policy, but we also consider whether
> the effects produced by operation of the policy language are consistent with
> public policy.

*Id.* (internal citations and quotations omitted).  Moreover, "unlike a negotiated contract, an

insurance policy is often imposed on a 'take-it-or-leave-it' basis.  Therefore, [courts] assume a

heightened responsibility in reviewing insurance policy terms to ensure that they comply with

public policy and principles of fairness." *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501–02

(Colo. 2004) (internal citations and quotations omitted).

In the present case, the Court finds that the application of the earth movement exclusion

to loss caused by earth movement resulting solely from the fire-fighting activities would be

contrary to public policy.  Construing the evidence before the Court in the light most favorable to

the plaintiffs, the evidence is that the Millers, upon learning the Waldo Canyon fire was

approaching their home, began clearing brush and removing trees around their property.  When

the fire did reach the house, the fire department—at least in part because of the Millers'

mitigation efforts—saved their home from complete destruction.  However, in the process, the

firefighters released a great deal of water on the property, some of which sunk into the ground,

causing earth movement and resulting foundation damage.  Thus, on American Family's reading

of the contract, the Millers would have been better off if the firefighters had not saved the house.

Indeed, had the house burned to the ground, the plaintiffs would have been fully covered for the

entirety of their loss.  Instead, because the firefighters saved it, but in the process caused

relatively minor damage to the foundation, the Millers are now worse off.  For this reason, the

application of the earth movement exclusion in these circumstances would create an incentive for

homeowners to let their houses burn down completely.

An insurance policy that creates such an incentive contravenes public policy.  Indeed, as

courts have long recognized in a variety of contexts, there is a public policy interest in not

creating incentives for insureds to destroy their insured property. *See, e.g.*, *PHL Variable Ins.*

*Co. v. Bank of Utah*, 780 F.3d 863, 867 (8th Cir. 2015), as corrected (Mar. 17, 2015) ("In this

country, the dominant public policy underlying the [insurable interest] rule is to eliminate a form

of moral hazard. . . . Insurance policies that compensate beneficiaries upon . . . the destruction of

property that the beneficiary does not have an interest in preserving give beneficiaries an

incentive to . . . destroy the insured property."); *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731,

739 (1st Cir. 1990) ("[One] public policy imperative concerns the need to guard against

intentional destruction of property—a form of fraud."); *Nat'l Sec. Fire & Cas. Ins. Co. v.*

*Brannon*, 47 Ala. App. 319, 324 (Civ. App. 1971) ("It seems to be settled law everywhere that a

policy of insurance is void *Ab initio*, unless the insured has an insurable interest in the property

[because] if the insured has no insurable interest in the property insured, [he has] an incentive to

injure or destroy the insured property, which is against public policy.").

Because the application of the earth movement exclusion to the present facts would

create an incentive for homeowners to allow their property to be destroyed, and indeed to

encourage firefighters not to save their homes, the Court finds that public policy considerations

dictate against its enforcement here.[4]

In sum, the Court finds that (1) because the earth movement exclusion is ambiguous as to

whether it includes earth movement caused by man-made events and thus must be interpreted in

the insureds' favor, the foundation damage is covered if caused solely by the fire and fire-

---

[4] American Family argues that there is no public policy concern here because, even had the house burned
to the ground, it likely could have been rebuilt on the original foundation and, in any event, any damage
to the foundation caused by earth movement would not have been covered. ECF No. 49 at 3. However,
the relevant point here is that, from the Millers' perspective, it would have been better to instruct the
firefighters to let their house burn down so that they could avoid any potential damage to the foundation.
Indeed, it seems clear that the firefighters saved American Family more by saving the house than it cost to
repair the foundation.

fighting efforts; and, (2) independently, the application of the exclusion here cannot be enforced as a matter of public policy.  The Millers' foundation damage is covered by the policy if the damage was caused solely by earth movement resulting from the fire.

### 3. Damage Caused in Part by Natural Causes

The final question before the Court is whether any portion of the damage to plaintiffs' foundation is covered by the policy if the earth movement responsible for the damage was caused in part by natural causes, which, as discussed above, are unambiguously covered by the exclusion.[5]  The answer to this question turns on the so-called anti-concurrent cause clause, sometimes referred to simply as an "ACC" clause, contained in the policy, which provides that "[s]uch loss [including any loss caused directly or indirectly by earth movement] is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." Ex. 1, Exclusions section I, Part A (Bates 17).

The plain language of the anti-concurrent clause compels the conclusion that the foundation damage is not covered by the policy if it was caused in part by earth movement resulting from natural causes.  Under such a fact scenario, the foundation damage to the Millers' home would have had two causes, which occurred either concurrently or in sequence to one and other: (1) earth movement caused by natural causes and (2) earth movement caused by the fire and fire-fighting efforts.  Because earth movement caused by natural causes is clearly excluded under the policy, if such earth movement contributed at all to the damage to the foundation, the damage is excluded "regardless of any other cause or event contributing concurrently or in any sequence to the loss."

Indeed, Colorado courts have interpreted similar language in a similar manner.  In *Kane*

---

[5] Although I focus here on the earth movement exclusion, the reasoning that leads me to the conclusion that damage caused in part by natural causes is excluded would also apply if the damage were caused in part by something that is excluded by some other exclusion in the policy.  That is not an issue in this case.

*v. Royal Ins. Co. of Am.*, the Colorado Supreme Court examined a policy that excluded coverage

for "loss . . . caused by, resulting from, contributed to, or aggravated by . . . flood." 768 P.2d

678, 684–85 (Colo. 1989).  Because there was no dispute that a flood had contributed to the

plaintiffs' loss, the plain language of the policy compelled the conclusion that the loss was not

covered. *Id.* at 686.  Applying the *Kane* decision to an ACC identical to the one at issue in this

case,[6] a division of the Colorado Court of Appeals found that the ACC unambiguously excluded

coverage where an excluded peril and a covered peril combined to damage a dwelling.  *Colorado*

*Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App.

2008).  In that case, a building supported by wooden trusses had collapsed after a large

snowstorm. *Id.* at 840–41.  At the trial court, the jury found that the cause of the roof's collapse

was ninety percent due to the weight of the snow, and ten percent due to wear and tear, rust,

corrosion, decay, deterioration, and/or dampness of atmosphere. *Id.* at 841.  Because the latter

group of causes was excluded from coverage by the policy, the court found that the ACC

precluded any recovery.

   Thus, the Colorado appellate courts, including the Supreme Court, have found that ACC

clauses must be interpreted as they read.  Indeed, it seems that in each of the versions considered

to date, Colorado courts have concluded that coverage is excluded if any contributing cause was

an excluded risk, although none of the relevant cases have specifically considered an earth

movement exclusion.  For these reasons, the Court finds that if the earth movement that damaged

the Millers' foundation was caused in part by natural causes unrelated to the fire and in part by

the fire and associated fire-fighting efforts, the foundation damage is not covered by the policy.

---

[6] The policy in *Colorado Intergovernmental Risk Sharing Agency* provides that: "We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." 207 P.3d at 841.

On these facts, the ACC bars coverage.

### III. <u>Conclusion and Order</u>.

The Court finds that:

1. If the earth movement that damaged the Millers' foundation was caused solely by the fire and associated fire-fighting efforts, the damage is covered by their policy with American Family.

2. If, however, the earth movement was caused in part by natural causes unrelated to the fire and in part by the fire and associated fire-fighting efforts, no portion of the damage is covered by the policy.

Defendant's Rule 50 motion is denied, and the Court's previous order granting that motion in part is vacated to the extent inconsistent with the present order. The Court's tendered instruction No. 10-A must be revised to be consistent with this order.[7]

DATED this 8th day of May, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

---

[7] The instruction should read: Plaintiffs Michael and Diane Miller's insurance policy contains an exclusion that excludes from coverage losses caused by earth movement. However, the applicability of the exclusion depends on what caused the earth movement. If you find that the Millers sustained a loss as a result of earth movement, such as expanding or contracting soil that in turn caused the foundation to move, and you further find that the earth movement was caused solely by the fire-fighting activities, then you may consider such losses when you determine whether the Millers have sustained any loss as a result of a breach of contract. But if such earth movement resulted, in whole or in part, from natural causes, then the exclusion applies even if the fire-fighting activities also contributed to the earth movement. In that event, you may not include any losses resulting from earth movement in your award.